ANDRÉS PÉREZ RÍOS, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE PONCE, HON. JOAQUÍN CORREA SUÁREZ, JUEZ, demandado; EL PUEBLO DE PUERTO RICO, interventor.

Núm. 1931.—*Sometido:* Diciembre 13, 1951. *Resuelto:* Diciembre 21, 1951.

*Héctor Lugo Bougal,* abogado del peticionario; *Hon. Procurador General Víctor Gutiérrez Franqui* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, interventor.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Expedimos un auto de *certiorari* para revisar la resolución dictada por el Tribunal de Distrito de Puerto Rico, Sección de Ponce, con fecha 5 de noviembre de 1951 declarando sin lugar el recurso de habeas corpus instado por Andrés Pérez Ríos.

Alega el peticionario ahora en su petición de certiorari, que radicó ante el tribunal de distrito mencionado una solicitud de hábeas corpus alegando la no existencia de causa probable para su detención y que la fianza de $50,000 exigídale para permanecer en libertad provisional por un supuesto delito de asesinato en primer grado era excesiva e irrazonable; que expedido el auto de hábeas corpus y celebrada la vista del recurso, el fiscal presentó en evidencia para sostener la validez del arresto una certificación médica relativa a la autopsia practicada en el cadáver del occiso Joaquín Yordán Munet, así como también la declaración jurada del menor Nelson Ramos Rodríguez, ofreciendo él en relación con su situación económica el testimonio de su hermano Ángel Pérez Ríos, y que en la fecha arriba indicada el tribunal recurrido declaró sin lugar el recurso de hábeas corpus en cuanto a ambos aspectos y desestimó asimismo una moción de reconsideración por él presentada. Ahora fundamenta su petición de certiorari exclusivamente en que el tribunal inferior erró al resolver que la fianza fijádale no es excesiva.

En varios casos hemos resuelto que para determinar si la fianza exigida en un caso es excesiva o no, deben tomarse en consideración: (*a*) la naturaleza y gravedad del delito imputado; (*b*) la capacidad económica del acusado para prestarla; (*c*) las probabilidades de convicción y (*d*) la severidad de la pena que apareja el delito. *Waldin* v. *Feli-*

*ciano*, 62 D.P.R. 212; *Ex parte Collazo*, 52 D.P.R. 109. Veamos, en su consecuencia, si tomando en consideración esas circunstancias la fianza de $50,000 fijada al peticionario resulta excesiva o no.

 El delito imputádole lo es el de asesinato en primer grado. En relación con las condiciones que hay que tomar en consideración bajo los requisitos (*a*), (*c*) y (*d*) mencionados, diremos meramente que para demostrar la existencia de causa probable el fiscal ofreció la certificación médica y el testimonio del menor Ramos Rodríguez a que hemos aludido. De la primera se desprende que el interfecto recibió 28 heridas, y de la declaración del menor, que éste identificó cierta ropa usada por el peticionario mientras pastoreaba vacas y mataba lechones; que en la noche del 24 de julio el peticionario al salir de su casa llevaba en un bolso de papel de tamaño regular la ropa indicada, cogiendo por la vereda que conduce al barrio Las Magas; que esto lo vió el declarante porque se asomó por un roto; que al regresar el peticionario llamó a su mujer, Elena Caraballo, pidiéndole que abriera la puerta y ésta así lo hizo, prendiendo la luz; que el declarante estaba despierto en ese momento y vió que Pérez Ríos, conocido por El Corso, "tenía la ropa llena de sangre desde el frente de la camisa hasta abajo, hasta los pantalones; traía el machete también lleno de sangre y lo puso en un rincón de la cocina," diciéndole a Elena "allá tuve una discusión con Morgan y lo maté;" que en ese momento El Corso estaba tan borracho que se caía, y luego de quitarse la ropa y de liarla en un papel se acostó; que Pérez Ríos se levantó como a las cinco de la mañana y luego de salir por espacio de 25 ó 30 minutos con Juan Borreli y de llevar un lechón a la playa de Guayanilla, El Corso regresó y le dijo al declarante "que le fuera a quemar la ropa que estaba ensangrentada envuelta en un periódico," y al negarse éste El Corso cogió el paquete, una caja de fósforos y una botellita de gas y se fué para el río, viendo el declarante al poco rato que había humo

en el aire por el sitio por donde cogió El Corso; que después éste vino a su casa y más tarde fué a asar el lechón en la playa.

Tomando conocimiento judicial de la severidad de la pena que apareja el delito imputádole y habiéndose establecido los otros dos requisitos mencionados, veamos entonces cuál es la capacidad económica del acusado para poder prestar la fianza exigídale. Sobre este extremo él produjo la declaración de su hermano Ángel Pérez Ríos, quien declaró que el peticionario no tiene propiedades; que se dedicaba a matar cerdos y a venderlos crudos para así poder alimentar a sus hijos; que el peticionario no tiene relaciones sociales y económicas, ni rentas de clase alguna; y que durante la zafra trabaja en la Central Rufina, siendo de esa entidad la casa donde vive.

Habidas en consideración las circunstancias expuestas, creemos que el tribunal inferior abusó de su discreción al no rebajar la fianza fijada por el ministerio público al peticionario. Conforme dijo el Tribunal Supremo de la Nación con fecha 5 de noviembre del presente año en *Stack* v. *Boyle:*

"El derecho a permanecer en libertad con anterioridad al juicio está condicionado a que el acusado garantice debidamente que comparecerá a juicio y cumplirá la sentencia que se le imponga de ser hallado culpable. (Cita). Al igual que ocurría cuando se seguía la antigua práctica de obtener declaraciones juradas de personas responsables que se comprometían a servir de fiadores al acusado, la práctica moderna de exigir una fianza o el depósito de numerario sujeto a confiscación sirve de garantía adicional para la comparecencia del acusado. Toda fianza que se fije en una suma mayor que la cantidad que razonablemente se calcule cumpla con este fin es excesiva según la Enmienda Octava (Cita). Puesto que el fin de la fianza es limitado, la fijación de la misma a cualquier acusado debe basarse en normas que armonicen con el propósito de garantizar la comparecencia del acusado."

Teniendo en mente ese propósito y las circunstancias que aquí concurren consideramos que una fianza de $10,000 resulta

934

ser razonable para garantizar la comparecencia del acusado en corte.

*Se dictará sentencia anulando la resolución recurrida y ordenando se fije al acusado una fianza por la suma que se acaba de indicar.*